**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JORGE GOMEZ,                        :
    Plaintiff,                  :
                                :        No. 1:20-cv-01637
    v.                          :
                                :        (Judge Kane)
THOMAS CULLEN, et al.,              :
    Defendants                  :

**MEMORANDUM**

Presently before the Court is the motion to dismiss and/or for summary judgment (Doc. No. 38) filed by Defendants Thomas Cullen ("Cullen"), J.B. Foster ("Foster"), Ryan Parkyn ("Parkyn"), K. Sorrell ("Sorrell"), B. Zalno ("Zalno"), George Robinson ("Robinson"),[1] and the United States of America.  The motion is fully briefed and ripe for disposition.

**I.      BACKGROUND**

On September 10, 2020, pro se Plaintiff Jorge Gomez ("Plaintiff"), who is presently confined at the Federal Correctional Institution Allenwood-Medium ("FCI Allenwood-Medium") in White Deer, Pennsylvania, initiated the above-captioned action by filing a complaint pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), against Defendants Thomas, Parkyn, and Foster.  (Doc. No. 1.)  The above-captioned action is proceeding on Plaintiff's second amended complaint (Doc. No. 17) pursuant to Bivens and the Federal Tort Claims Act ("FTCA").  Plaintiff raises Eighth Amendment and negligence claims related to his incarceration at FCI Allenwood-Medium as well as the Federal Correctional Institution Ray Brook ("FCI Ray Brook") in Ray Brook, New York.  (Doc. No. 17.)

---

[1] Pro se Plaintiff Jorge Gomez refers to Robinson as John Doe in his second amended complaint. (Doc. No. 17 at 7.)  Defendants' filings have identified John Doe as Robinson.

Defendants filed their motion to dismiss and/or for summary judgment on March 1, 2021. (Doc. No. 38.)  They filed their supporting materials on March 11, 2021.  (Doc. Nos. 42, 43.) Plaintiff filed responses to the motion on March 15 and 24, 2021.  (Doc. Nos. 44, 46.) Defendants filed a reply brief on April 1, 2021.  (Doc. No. 47.)  The motion to dismiss and/or for summary judgment is, therefore, ripe for disposition.

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1)

Defendants Zalno, Cullen, and Parkyn move for dismissal of Plaintiff's second amended complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, asserting that the Court lacks subject-matter jurisdiction because sovereign immunity bars Plaintiff's official capacity claims against them and because Defendant Zalno is entitled to statutory immunity. (Doc. No. 43 at 19-21.)  The plaintiff bears the burden of demonstrating that subject-matter jurisdiction exists.  See Lightfoot v. United States, 564 F.3d 625, 627 (3d Cir. 2009).  When ruling on a Rule 12(b)(1) motion, the Court "must accept as true the allegations contained in the plaintiff's complaint, except to the extent federal jurisdiction is dependent on certain facts."  See Fed. Realty Inv. Trust v. Juniper Props. Group, No. 99-3389, 2000 WL 45996, at *3 (E.D. Pa. Jan. 21, 2000 (citing Haydo v. Amerikohl Mining, Inc., 830 F.2d 494, 496 (3d Cir. 1987)).

### B.    Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) permits a defendant to bring a motion challenging the court's right to exercise personal jurisdiction over it.  See Fed. R. Civ. P. 12(b)(2).  Once "the defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction."  See Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992).  At the

pleading stage, a plaintiff is required only to establish a <u>prima facie</u> case of personal jurisdiction over the defendant, and the court must accept the plaintiff's allegations as true and construe disputed facts in the plaintiff's favor.  See <u>Metcalfe v. Renaissance Marine, Inc.</u>, 566 F.3d 324, 330 (3d Cir. 2009); <u>Carteret Sav. Bank</u>, 954 F.2d at 146.  Further, a court may consider the parties' affidavits and other evidence when making determinations regarding personal jurisdiction.  See <u>Metcalfe</u>, 566 F.3d at 330; <u>Connell v. CIMC Intermodal Equip.</u>, No. 1:16-cv-714, 2016 WL 7034407, at *1 (M.D. Pa. Dec. 2, 2016).

"A federal court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of the state."  <u>Carteret Sav. Bank</u>, 954 F.2d at 144-45 (quoting <u>Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n</u>, 819 F.2d 434, 436 (3d Cir. 1987)).  Pennsylvania's long-arm statute permits the Court to exercise personal jurisdiction "to the fullest extent allowed under the Constitution of the United States."  42 Pa. Cons. Stat. § 5322(b).  Therefore, in its exercise of personal jurisdiction, this Court is constrained only by the Due Process Clause of the United States Constitution, which requires that a defendant has "certain minimum contacts with [the forum state] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice."  See <u>O'Connor v. Sandy Lane Hotel Co., Ltd.</u>, 496 F.3d 312, 316 (3d Cir. 2007) (quoting <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945)).  Requiring "minimum contacts" between the defendant and the forum state gives "fair warning" to a defendant that he or she may be called to defend a lawsuit in that state.  See <u>Marten v. Godwin</u>, 499 F.3d 290, 296 (3d Cir. 2007) (quotation omitted).

Two types of personal jurisdiction comport with these notions of due process: specific and general jurisdiction.  See <u>Daimler AG v. Bauman</u>, 134 S. Ct. 746 (2014).  Specific jurisdiction encompasses cases "in which the suit 'aris[es] out of or relate[s] to the defendant's

contacts with the forum.'"  See id. at 754 (citations omitted).  A court's determination as to whether the exercise of specific jurisdiction is proper entails a three-part inquiry:  (1) "the defendant must have 'purposefully directed [its] activities' at the forum";  (2) "the litigation must 'arise out of or relate to' at least one of those activities";  and (3) "if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with 'fair play and substantial justice.'"  See O'Connor, 496 F.3d at 317 (alterations in original) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985);  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984);  Grimes v. Vitalink Commc'ns Corp., 17 F.3d 1553, 1559 (3d Cir. 1994)).  General jurisdiction, however, may be exercised by a court when a non-resident's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."  See id. (citations omitted).

## C. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See Ashcroft v. Iqbal, 556 U.S. 662, 679

(2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  To prevent

dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims

are facially plausible.  See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203,

210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the

defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has

not 'show[n]' – 'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (citing Fed. R.

Civ. P. 8(a)(2)).

Accordingly, the United States Court of Appeals for the Third Circuit has identified the

following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the

elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations

contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine

whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to

an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010)

(internal citations and quotation marks omitted).  The Third Circuit has specified that in ruling on

a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the

complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly

authentic documents if the complainant's claims are based upon these documents."  See Mayer v.

Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White

Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the court must be mindful that a document

filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A

pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than

formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

**D.    Motion for Summary Judgment**

Federal Rule of Civil Procedure 56(a) requires the Court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law.  See id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the Court must view the facts and all reasonable inferences in favor of the nonmoving party.  See Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988).  In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings.  When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine issue of material fact, the

nonmoving party is required to go beyond his pleadings with affidavits, depositions, answers to interrogatories, or the like in order to demonstrate specific material facts that give rise to a genuine issue.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts."  See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).  When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case that it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  See Celotex, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

As noted supra, when determining whether an issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party.  See White, 862 F.2d at 59.  In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor.  See id. (citations omitted).  However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted."  See L.R. 56.1.  A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se litigant.  These rules apply with equal force to all parties.  See Sanders v. Beard, Civ. No. 09-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (stating that pro se parties "are not excused from complying with court orders and the local rules of court");

Thomas v. Norris, Civ. No. 02-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006)

(explaining that pro se parties must follow the Federal Rules of Civil Procedure).

      **E.**    **Bivens Action**

      A Bivens civil rights action asserted under § 1331 is evaluated using the same standards

applicable to a § 1983 civil rights action.  See Paton v. LaPrade, 524 F.2d 862, 871 (3d Cir.

1975); Veteto v. Miller, 829 F. Supp. 1486, 1492 (M.D. Pa. 1992).  To state a claim under

Bivens, a plaintiff must allege that he was deprived of a federal right by a person acting under

color of federal law.  See Young v. Keohane, 809 F. Supp. 1185, 1199 (M.D. Pa. 1992).

**III.**    **STATEMENT OF MATERIAL FACTS[2]**

      **A.**    **Facts Regarding Plaintiff's Medical Care**

      Defendant Zalno is a Commissioned Corps Officer in the United States Public Health

Service who worked at FCI Allenwood during all relevant times.  (Doc. No. 42 ¶¶ 1-2.)

---

[2] The Local Rules provide that in addition to the requirement that a party file a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried."  See M.D. Pa. L.R. 56. 1.  The Rule further requires the inclusion of references to the parts of the record that support the statements.  See id.  Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.  See id.

      Unless otherwise noted, the background herein is derived from Defendants' Rule 56.1 statement of facts.  (Doc. No. 42.)  Although Plaintiff has included a statement of facts within his brief in opposition (Doc. No. 46), this statement fails to correspond to the statement of facts filed by Defendants.  The averments set forth by Plaintiff are entirely independent of those in Defendants' statement and do not contain specific references to the parties of the record supporting the statements.  Plaintiff's statement of facts, therefore, does "not comply with Local Rule 56.1's requirement of parity between the two filings."  See Edens v. White, No. 1:18-cv-678, 2020 WL 1531220, at *1 n.1 (M.D. Pa. Mar. 31, 2020).  Accordingly, the Court deems the facts set forth by Defendants to be undisputed.  See Fed. R. Civ. P. 56(e)(2); M.D. Pa. L.R. 56.1; United States v. Alberto, No. 3:18-cv-1014, 2020 WL 730316, at *2 (M.D. Pa. Feb. 13, 2020) (concluding that "[f]ailure to file this [responsive statement of material facts] results in admission of the moving party's statement of facts").

Plaintiff arrived at FCI Allenwood on May 7, 2018, and Defendant Cullen examined him on May 14, 2018.  (Id. ¶ 3.)  Defendant Cullen noted that Plaintiff "had a pre-existing colitis diagnosis and mesalamine prescription."  (Id. ¶ 4.)  During the examination, Defendant Cullen noted that Plaintiff "indicated that his GI symptoms were improved, but he was still experiencing cramping and mucus in his bowel movements."  (Id. ¶ 5.)  Defendant Cullen "ordered extensive bloodwork and cultures and a consultation with a gastroenterologist."  (Id. ¶ 6.)

Plaintiff saw the gastroenterologist on May 23, 2018.  (Id. ¶ 7.)  The gastroenterologist recommended that Plaintiff "take Flagyl, an antibiotic, and undergo a colonoscopy if the medication was ineffective."  (Id. ¶ 8.)  Subsequently, Defendant Zalno ordered Flagyl and another medication so that Plaintiff could prepare for the colonoscopy.  (Id. ¶ 9.)  Plaintiff saw Defendant Zalno on June 22, 2018, at which time he "complained his medication was not helping and questioned whether he needed a colonoscopy."  (Id. ¶¶ 10-11.)  Plaintiff "denied any changes or concerns about his condition," and Defendant Zalno told Plaintiff to continue his medication.  (Id. ¶¶ 12-13.)

Plaintiff had the colonoscopy done in July of 2018.  (Id. ¶ 14.)  It "indicated a benign colonic mucosa, negative for dysplasia."  (Id.)  Colon biopsies "did not show any signs of colitis, contrary to the prior diagnosis."  (Id. ¶ 15.)  The gastroenterologist recommended that Plaintiff try a fiber supplement.  (Id. ¶ 16.)  Based on the gastroenterologist's report, Defendant Cullen "opined that [Plaintiff's] colonoscopy did not reveal and serious concerns requiring further treatment."  (Id. ¶ 17.)

Plaintiff saw Defendant Zalno for a chronic care appointment on November 7, 2018.  (Id. ¶ 18.)  He reported "some continued mucous with his bowel movements."  (Id. ¶ 19.)  Defendant Zalno reviewed Plaintiff's commissary food list, and Plaintiff admitted his diet could be

improved because he was eating ice cream, Doritos, mayonnaise, candy, and other unhealthy food.  (<u>Id.</u> ¶¶ 20-21.)  Plaintiff "denied taking the recommended fiber supplement and declined to start cholesterol medication."  (<u>Id.</u> ¶ 22.)  Defendant Zalno provided a commissary slip for fiber.  (<u>Id.</u> ¶ 23.)

Plaintiff saw a Physician's Assistant ("PA") on January 23, 2019, for a non-urgent sick call.  (<u>Id.</u> ¶ 24.)  The PA arranged for Plaintiff to see Defendant Zalno.  (<u>Id.</u> ¶ 25.)  On January 28, 2019, Plaintiff saw Defendant Zalno and "explained he experienced pain after bowel movements, but denied having bloody stools, diarrhea, constipation, nausea, vomiting, fever, or chills."  (<u>Id.</u> ¶ 26.)  Plaintiff "indicated that he still had not tried fiber tablets or powder, as recommended, by his gastroenterologist."  (<u>Id.</u> ¶ 27.)

On March 20, 2019, Plaintiff was evaluated by the gastroenterologist, who "recommended a flex sigmoid colonoscopy to address [Plaintiff's] purported rectal and anal discomfort."  (<u>Id.</u> ¶ 28.)  The gastroenterologist recommended that Plaintiff "stop taking mesalamine, which was promptly discontinued."  (<u>Id.</u> ¶ 29.)  Plaintiff saw Defendant Cullen on April 3, 2019, for a chronic care appointment.  (<u>Id.</u> ¶ 30.)  "It was noted that [Plaintiff's] recent lab work indicated hyperlipidemia, unrelated to his GI issues, but no other concerns."  (<u>Id.</u> ¶ 31.)  Defendant Cullen "recommended dietary and exercise improvements, but [Plaintiff] indicated that he wanted to get his bowel situation fixed first."  (<u>Id.</u> ¶ 32.)

Plaintiff had his flex sigmoid colonoscopy in May of 2019.  (<u>Id.</u> ¶ 33.)  It "did not reveal any concerning medical abnormalities."  (<u>Id.</u>)  Plaintiff's "biopsies were normal and the gastroenterologist recommended a pelvic MRI, which was promptly ordered."  (<u>Id.</u> ¶ 34.)  On July 1, 2019, Plaintiff saw Defendant Zalno and reported "continued pain after bowel movements."  (<u>Id.</u> ¶ 35.)  Plaintiff "reported having loose stools, but no blood in stool, changes

in appetite or diet, abdominal pain, fever, chills, or urinary issues." (Id. ¶ 36.)  Defendant Zalno
reviewed the colonoscopy results with Plaintiff.  (Id. ¶ 37.)

Plaintiff had a pelvic MRI on July 24, 2019.  (Id. ¶ 38.)  The results "did not indicate any
GI pathology."  (Id.)  On July 29, 2019, a lieutenant called Defendant Zalno to see Plaintiff.  (Id.
¶ 39.)  Plaintiff "was in a wheelchair and complained that staff were not treating his rectal pain."
(Id. ¶ 40.)  Plaintiff "explained that he had pain after a bowel movement at midnight."  (Id. ¶ 41.)
Defendant Zalno examined Plaintiff, who denied "bloody stools, black stool, constipation,
nausea, vomiting, chest pain, weakness, fever, chills, and fatigue."  (Id. ¶ 42.)  Plaintiff told
Defendant Zalno "that his pain dissipated while he was laying on the exam bed."  (Id. ¶ 43.)
Plaintiff also appeared anxious during the examination.  (Id. ¶ 44.)  Defendant Zalno discussed
the possibility of anti-anxiety medication, which Plaintiff "seemed agreeable to take."  (Id. ¶ 45.)

An EMT saw Plaintiff later that day at the request of Plaintiff's housing unit officer.  (Id.
¶ 46.)  Plaintiff "complained of localized abdominal pain that worsened with movement or when
in certain positions."  (Id. ¶ 47.)  He also noted that he had not had his daily bowel movement.
(Id. ¶ 48.)  The EMT provided Mylanta and told Plaintiff to "rest, eat bland foods, and follow-up
if his condition worsened."  (Id. ¶ 49.)  On July 31, 2019, Plaintiff saw Defendant Zalno again.
(Id. ¶ 50.)  Plaintiff "reported loose stools, but explained that Mylanta helped as well as gas
medication from the commissary."  (Id. ¶ 51.)  Plaintiff asked about starting anti-anxiety
medication.  (Id. ¶ 52.)  Later that day, Defendant Cullen "approved an order for fluoxetine to
treat [Plaintiff's] anxiety."  (Id. ¶ 53.)

On October 4, 2019, Plaintiff saw Defendant Zalno for a chronic care appointment.  (Id.
¶ 54.)  Plaintiff "reported continued diarrhea, which he said he believed to be related to eating
spicy food at mainline."  (Id. ¶ 55.)  Defendant Zalno advised Plaintiff "to avoid aggravating

foods," and Plaintiff requested a special diet without spices for the first time.  (Id. ¶¶ 56-57.)
Defendant Zalno referred him to a dietician for consultation.  (Id. ¶ 58.)  Plaintiff also agreed to
increase his fluoxetine dosage, and Plaintiff "denied any bloody stools, black stools, abdominal
pain, fever, chills, or other symptoms."  (Id. ¶ 60.)  Defendant Zalno "transferred out of FCI
Allenwood on November 13, 2019."  (Id. ¶ 61.)

On February 6, 2020, a Bureau of Prisons ("BOP") dietician reviewed Plaintiff's medical
information and commissary list and "provided information to FCI Allenwood staff on how to
best control [Plaintiff's] GI issues."  (Id. ¶ 62.)  On February 18, 2020, a PA evaluated Plaintiff,
who "indicated he was still having diarrhea once a day with subsequent rectal pain, although
[Plaintiff] acknowledged to the PA that his colonoscopy and MRI results were normal."  (Id.
¶ 64.)  Plaintiff stated that his fluoxetine was helping.  (Id. ¶ 65.)  The PA reviewed the
dietician's recommendations with Plaintiff.  (Id. ¶ 66.)

Defendant Cullen saw Plaintiff on February 25, 2020, for a chronic care appointment.
(Id. ¶ 67.)  Plaintiff "stated that he was taking his medication, feeling good, and had no
complaints."  (Id. ¶ 68.)  Defendant Cullen "reviewed [Plaintiff's] lab results with him, which
were unremarkable."  (Id. ¶ 69.)  Two days later, Plaintiff "received a slip for a low fiber diet,
per the dietician's recommendation."  (Id. ¶ 70.)  Based on Defendant Cullen's review of
Plaintiff's medical records, his conversations with Plaintiff, and his conversations with other
BOP medical staff, Defendant Cullen believes that Plaintiff "has received appropriate and timely
diagnostic testing, medical treatment, and medication, in line with professional standards[,] while
at FCI Allenwood."  (Id. ¶ 71.)

**IV.     DISCUSSION**

Defendants assert the following arguments in support of their motion to dismiss and/or

for summary judgment: (1) the Court lacks personal jurisdiction over Defendants Foster, Sorrell,

and Robinson; (2) the Court lacks subject matter jurisdiction over Plaintiff's official capacity

claims against Defendants Cullen, Parkyn, and Zalno as well as his individual capacity claims

against Defendant Zalno; (3) Plaintiff failed to allege sufficient facts demonstrating that

Defendant Parkyn was personally involved in his medical treatment; (4) the record demonstrates

that Defendant Cullen was not deliberately indifferent to Plaintiff's medical needs; (5)

Defendants Parkyn and Cullen are entitled to qualified immunity; and (6) judgment should be

granted in the United States' favor because Plaintiff has not established a prima facie medical

negligence claim.  (Doc. No. 43 at 15.)  The Court considers these arguments in turn below.

**A.     Personal Jurisdiction over Defendants Foster, Sorrell, and Robinson**

Defendants Foster, Sorrell, and Robinson are employees at FCI Ray Brook in Ray Brook,

New York.  (Doc. No. 17.)  They assert that they are entitled to dismissal because Plaintiff's

second amended complaint is devoid of any facts suggesting that they "are residents of the

Commonwealth of Pennsylvania, they work in the Commonwealth, or they transact business in

the Commonwealth."  (Doc. No. 43 at 18.)  They argue further that Plaintiff "has failed to

demonstrate that it would be fair to require the FCI Ray Brook defendants to appear in the

Middle District of Pennsylvania to defend this action."  (Id.)  Finally, they maintain that the

Middle District of Pennsylvania is an improper venue for Plaintiff's claims against them.  (Id. at

18-19.)

As noted supra, once "the defendant raises the question of personal jurisdiction, the

plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to

establish personal jurisdiction." See Carteret Sav. Bank, FA, 954 F.2d at 146. Plaintiff has neither addressed nor explained how Defendants Foster, Sorrell, and Robinson have any contacts with the Commonwealth of Pennsylvania such that they would reasonably anticipate being brought into court here. Moreover, Plaintiff has failed to prove that they have the requisite minimum contacts to subject them to the jurisdiction of this Court. See Mellon Bank (East) PSFS, Nat'l Ass'n v. DiVeronica Bros., Inc., 983 F.2d 551, 554 (3d Cir. 1993) (noting that "[w]here the defendant has raised a jurisdictional defense, the plaintiff bears the burden of establishing either that the cause of action arose from the defendant's forum-related activities (specific jurisdiction) or that the defendant has 'continuous and systematic' contacts with the forum state (general jurisdiction)").

In response, Plaintiff appears to assert that equitable tolling stops the statute of limitations from running (Doc. No. 46 at 8-9), but this argument has no bearing on whether this Court can exercise personal jurisdiction over Defendants Foster, Sorrell, and Robinson. Plaintiff also asserts that because he has named the United States as a Defendant, it can "take [the] place in each defendant's individual capacity up and above to follow under personal jurisdiction." (Id. at 9.) Plaintiff, however, cannot maintain a Bivens suit against the United States because such suits are barred by sovereign immunity. See Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 72 (2001). Accordingly, Plaintiff cannot maintain his Bivens claims against Defendants Foster, Sorrell and Robinson in this Court because this Court lacks personal jurisdiction over those Defendants. See Smith v. Fed. Bureau of Prisons, No. 3:15-cv-1013, 2016 WL 2932098, at *7-8 (M.D. Pa. May 19, 2016) (concluding the same regarding an inmate-plaintiff's claims against a BOP employee at the Central Office in Washington, D.C.).

Defendants also maintain that this Court is an improper venue for Plaintiff's <u>Bivens</u> claims against Defendants Foster, Sorrell, and Robinson.  (Doc. No. 43 at 18-19.)  Because the Court has determined that it lacks personal jurisdiction over these Defendants, the Court "must decide whether to dismiss Plaintiff's [claims against them] or transfer [them] to another court that can exercise personal jurisdiction over Defendants."  See <u>Magill v. Elysian Global Corp.</u>, No. 1:20-cv-6742, 20201 WL 1221064, at *8 (D.N.J. Apr. 1, 2021).  The applicable provision is set forth in 28 U.S.C. § 1631, which governs transfers when there is a "want of jurisdiction." See <u>Chavez v. Dole Food Co.</u>, 836 F.3d 205, 224 (3d Cir. 2016) (explaining that when a court determines that it lacks personal jurisdiction over defendants, the determination of whether to dismiss or transfer is governed by 28 U.S.C. § 1631 and not 28 U.S.C. § 1406(a), which concerns improper venue).  This section provides in relevant part:

> [Where a] court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it was transferred.

<u>See</u> 28 U.S.C. § 1631.

In the instant case, Plaintiff's claims against Defendants Foster, Sorrell, and Robinson concern actions they took at FCI Ray Brook while Plaintiff was incarcerated there.  FCI Ray Brook is located in Essex County, New York, within the Northern District of New York.  <u>See</u> 28 U.S.C. § 112(a).  The Third Circuit has "interpreted section 1631 to permit the transfer of all or only part of an action."  <u>See</u> <u>D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.</u>, 566 F.3d 94, 110 (3d Cir. 2009).  Moreover, the Court may <u>sua</u> <u>sponte</u> transfer a case under § 1631. <u>See</u> <u>Danziger & De Llano, LLP v. Morgan Verkamp LLC</u>, 948 F.3d 124, 132 (3d Cir. 2020). The Court "shall" transfer a matter "if [doing so] is in the interest of justice."  <u>See</u> 28 U.S.C.

§ 1631.  In the instant case, the Court finds that it is in the interest of justice to transfer Plaintiff's

Bivens claims against Defendants Foster, Sorrell, and Robinson to the United States District

Court for the Northern District of New York for further adjudication there.  The Court, therefore,

declines to grant Defendants' motion to dismiss such claims for lack of personal jurisdiction and

will instead transfer them sua sponte pursuant to 28 U.S.C. § 1631.

### B.      Subject-Matter Jurisdiction

Plaintiff indicates that he is bringing suit against Defendants Cullen, Parkyn, and Zalno in

both their individual and official capacities.  (Doc. No. 17 at 1-2, 10-11.)  The doctrine of

sovereign immunity, however, bars suits against the United States unless the Government has

waived that immunity.  See FDIC v. Meyer, 510 U.S. 471, 483 (1994).  Sovereign immunity

extends to individual officers acting in their official capacities, absent an explicit waiver.  See

Treasurer of N.J. v. U.S. Dep't of Treasury, 684 F.3d 382, 395 (3d Cir. 2012).  Bivens, however,

does not waive sovereign immunity with respect to claims brought against federal employees

sued in their official capacities.  See Malesko, 534 U.S. at 72.  Thus, Plaintiff's official capacity

claims against Defendants Cullen, Parkyn, and Zalno are essentially claims against the United

States that are subject to dismissal because of sovereign immunity.  See Brooks v. Bledsoe, 682

F. App'x 164, 169 (3d Cir. 2017).

Defendant Zalno asserts further that she is entitled to statutory immunity from Plaintiff's

claims against her in her individual capacity due to her position as a commissioned officer in the

United States Public Health Service.  (Doc. No. 43 at 21.)  Pursuant to 42 U.S.C. § 233(a),

members of the Public Health Service are immune from suit under Bivens if the injury for which

compensation is sought resulted from the performance of a medical function while acting within

the scope of their office or employment.  See Hui v. Castaneda, 559 U.S. 799, 805-06 (2010)

(concluding that the Public Health Service Act, 42 U.S.C. § 233(a), precludes <u>Bivens</u> actions against Public Health Service personnel for constitutional violations arising out of their official duties). In the instant case, Plaintiff alleges that Defendant Zalno denied adequate medical treatment while performing her duties as a PA at FCI Allenwood-Medium. The record, however, establishes that Defendant Zalno is a Commissioned Officer of the United States Public Health Service who had been assigned to FCI Allenwood-Medium during all relevant times. Defendant Zalno, therefore, is entitled to statutory immunity from Plaintiff's <u>Bivens</u> claims, and the Court lacks subject-matter jurisdiction over such claims.

### C.      Eighth Amendment <u>Bivens</u> Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment of prisoners. <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994) (noting that "[t]o violate the Cruel and Unusual Punishment Clause, a prison official must have a sufficiently culpable state of mind. . . . In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety."). An Eighth Amendment claim includes both objective and subjective components. <u>See</u> <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991). Serious hardship to the prisoner is required to satisfy the Eighth Amendment's objective component. <u>See</u> <u>id.</u> The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind." <u>See</u> <u>id.</u> In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." <u>See</u> <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999). In order to establish an Eighth Amendment deliberate indifference claim, a claimant must demonstrate "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." <u>See</u> <u>Natale v. Camden Cty. Corr. Facility</u>, 318 F.3d 575, 582 (3d Cir. 2003).

Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." See Rouse, 182 F.3d at 197. The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." See Farmer, 511 U.S. at 837. Circumstantial evidence may establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it. See Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 842). Moreover, "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). Accordingly, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." See id.

The second prong of the Eighth Amendment inquiry is whether the plaintiff's medical needs were serious. A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." See Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). Not every condition is a serious medical need; instead, the serious medical need element contemplates a condition of urgency, namely, one that may produce death, degeneration, or extreme pain. See id. Moreover, because only egregious acts or omissions violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation.

See White v. Napoleon, 897 F.2d 103, 108-10 (3d Cir. 1990); see also Estelle v. Gamble, 429 U.S. 97, 106 (1976) (noting that "medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Additionally, prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients, see Young v. Kazmerski, 266 F. App'x 191, 194 (3d Cir. 2008), and a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment.  See White, 897 F.2d at 108-10.  Furthermore, it is well settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim.  See Taylor v. Norris, 36 F. App'x 228, 229 (8th Cir. 2002); Abdul-Wadood v. Nathan, 91 F.3d 1023, 1024-25 (7th Cir. 1996); Sherrer v. Stephens, 50 F.3d 496, 497 (8th Cir.1994); Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."); see also Pearson v. Prison Health Servs., 850 F.3d 528, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care.").

### 1.    Defendant Parkyn

Defendant Parkyn asserts that Plaintiff's claims against him are subject to dismissal because Plaintiff has failed to allege that Defendant Parkyn was personally involved in the alleged violations of his Eighth Amendment rights.  (Doc. No. 43 at 24-25.)  In his second amended complaint, Plaintiff alleges that in September of 2018, he spoke with Defendant Parkyn in the "prison chow hall" and told him about his difficulties with eating spicy food.  (Doc. No. 17 at 10.)  Plaintiff maintains that Defendant Parkyn said that he had talked to Defendant Cullen and

that Plaintiff's colonoscopy report indicated that there were no signs of colitis, and that even if Plaintiff had colitis there was no special diet for that condition.  (Id.)

The Court agrees that Plaintiff's second amended complaint fails to allege facts suggesting that Defendant Parkyn was personally aware that Plaintiff had a serious medical need and that he knew of and disregarded an excessive risk to Plaintiff's health.  See Rode v. Dellarciprete, 845 F.3d 1195, 1207 (3d Cir. 1988) (noting that "a defendant in a civil rights action must have personal involvement in the alleged wrongs").  In response, Plaintiff avers that Defendant Parkyn is "personally involve[d] in [a] superior capacity."  (Doc. No. 46 at 10.) Liability, however, "cannot be predicated solely on the operation of respondeat superior."  See Rode, 845 F.3d at 1207.  Moreover, with respect to supervisory liability, there are two theories: "one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused [the] constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations."  See Santiago v. Warminster Twp., 629 F.3d 121, 129 n.5 (3d Cir. 2010) (internal quotation marks omitted) (alteration in original).  As to the second theory, a plaintiff must show that each defendant personally participated in the alleged constitutional violation or approved of it.  See C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159, 173 (3d Cir. 2005); see also Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009).  With respect to the first theory of supervisory liability, "the plaintiff must establish that: (1) existing policy or practice creates an unreasonable risk of constitutional injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice."  See Merring

v. City of Carbondale, 558 F. Supp. 2d 540, 547 (M.D. Pa. 2008) (citing Sample v. Diecks, 885

F.2d 1099, 1118 (3d Cir. 1989)).

      In the instant case, Plaintiff has failed to allege that Defendant Parkyn had knowledge of

and acquiesced in any alleged violations of Plaintiff's Eighth Amendment rights by his

subordinates.  See A.M., 372 F.3d at 586.  Moreover, Plaintiff fails to identify a policy that

allegedly caused the violation of his constitutional rights.  See McTernan v. City of York, 56

F.3d 636, 658 (3d Cir. 2009).  Plaintiff's claims against Defendant Parkyn, therefore, are subject

to dismissal.

            **2.**      **Defendant Cullen**

      In the instant case, Defendants do not challenge whether Plaintiff had a serious medical

need.  Rather, Defendant Cullen asserts that a Plaintiff's medical records support a conclusion

that Plaintiff's arguments amount to no more than disagreement with the medical treatment he

received, and that such disagreement is insufficient to maintain an Eighth Amendment claim.

(Doc. No. 43 at 28-29.)

      In his second amended complaint, Plaintiff suggests that Defendant Cullen violated his

rights by not providing proper medication and a proper diet.  (Doc. No. 17 at 11.)  He asserts that

Defendant Cullen was aware of his "serious medical needs, and delayed or withheld treatment."

(Id. at 143.)  Contrary to Plaintiff's suggestions, however, the record clearly establishes that

Defendant Cullen provided care to Plaintiff for his condition.  Plaintiff first saw Defendant

Cullen shortly after arriving at FCI Allenwood-Medium, at which time Defendant Cullen ordered

"extensive bloodwork and cultures and a consultation with a gastroenterologist."  (Doc. No. 42

¶¶ 3-6.)  Plaintiff saw Defendant Cullen again on April 3, 2019, for a chronic care appointment.

(Id. ¶ 30.)  Defendant Cullen recommended dietary and exercise improvements to Plaintiff.  (Id.

¶ 32.)  Moreover, on July 31, 2019, Defendant Cullen approved an order for fluoxetine to treat Plaintiff's anxiety.  (Id. ¶¶ 50-53.)  Finally, Plaintiff saw Defendant Cullen on February 25, 2020, for another chronic care appointment.  (Id. ¶ 67.)  At that time, Plaintiff reported "that he was taking his medication, feeling good, and had no complaints."  (Id. ¶ 68.)  Defendant Cullen reviewed Plaintiff's lab results, which were unremarkable.  (Id. ¶ 69.)

In response, Plaintiff avers that if Defendant Cullen had followed the Adirondack Medical Center's recommendation of a special diet, Plaintiff would not have suffered pain and discomfort.  (Doc. No. 46 at 11-13.)  Plaintiff, however, has provided no evidence to support these allegations, and he cannot survive summary judgment by relying on unsupported assertions, conclusory allegations, or mere suspicions.  See, e.g., Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989) (noting that the party opposing summary judgment must raise "more than a mere scintilla of evidence in its favor").  Furthermore, Plaintiff, as a prisoner, is not entitled to the treatment of his choice.  See Reed v. Cameron, 380 F. App'x 160, 162 (3d Cir. 2010).  Moreover, there is no viable claim for an Eighth Amendment violation where one provider disagrees with or does not follow another doctor's recommendations.  See White, 897 F.2d at 110.

Plaintiff's disagreement with Defendant Cullen regarding the appropriate medical care for his condition does not support a claim of cruel and unusual punishment.  See Farmer, 685 F. Supp. at 1339.  Moreover, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  See Estelle, 429 U.S. at 106. In the instant case, the record does not establish that Defendant Cullen knew of Plaintiff's need

for medical treatment and intentionally refused to provide it, delayed necessary medical treatment for a non-medical reason, or prevented Plaintiff from receiving needed or recommended medical treatment.  Consequently, the Court will grant Defendant Cullen summary judgment as to Plaintiff's Eighth Amendment claim concerning medical care.

### 3.    Qualified Immunity

Defendants Cullen and Parkyn argue, in the alternative, that they are entitled to qualified immunity because the record establishes that their conduct "was objectively reasonable and lawful."  (Doc. No. 43 at 29.)  "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  To determine whether a right was clearly established, the Court must ask "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  See Schmidt v. Creedon, 639 F.3d 587, 598 (3d Cir. 2011).  "If it would not have been clear to a reasonable officer what the law required under the facts alleged, then he is entitled to qualified immunity."  Id.  Stated differently, for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." See al-Kidd, 563 U.S. at 741.  As the Supreme Court recently noted, "[t]his demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'"  See District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).  Accordingly, "there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is

constitutionally prohibited."  See Mammaro v. N.J. Div. of Child Prot. & Permanency, 814 F.3d 164, 169 (3d Cir. 2016) (quoting McLaughlin v. Watson, 271 F.3d 566, 572 (3d Cir. 2001)).

The United States Supreme Court's decision in White v. Pauly, 137 S. Ct. 548 (2017), clarifies the Court's inquiry in this regard.  In that case, the Supreme Court reaffirmed that its case law "do[es] not require a case directly on point" for a right to be clearly established, but "existing precedent must have placed the statutory or constitutional question beyond debate."[3] See id. at 551 (internal quotation marks omitted) (quoting Mullenix v. Luna, 136 S. Ct. 305, 308 (2015)).  The Supreme Court reiterated that the clearly-established law "must be 'particularized' to the facts of the case," and cautioned that the fact that a case presents a unique set of facts and circumstances is an "important indication" that a defendant's conduct at issue did not violate a "clearly established" right.  See id. at 552 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

As discussed supra, the record before the Court establishes that Plaintiff's claims against Defendant Cullen amount to no more than a disagreement with the medical treatment provided, which does not rise to the level of an Eighth Amendment violation.  As such, Defendant Cullen is entitled to qualified immunity.  Moreover, nothing in the record suggest that Defendant Parkyn was not "justified in believing that [Plaintiff was] in capable hands" because he was receiving medical treatment.  See Spruill, 372 F.3d at 236.  Likewise, there is no suggestion that Defendant Parkyn believed or had actual knowledge that the medical staff at FCI Allenwood-Medium were either mistreating or not treating Plaintiff.  See id.; see also Deshields v. Moclock, No. 1:18-cv-1709, 2019 WL 4082674, at *4 (M.D. Pa. Aug. 29, 2019) (noting that summary judgment is

---

[3] There may be the rare "obvious case," however, where "a body of case law" is not necessary. See Brosseau v. Haugen, 543 U.S. 194, 199 (2004).

appropriate "with respect to Eighth Amendment claims against health care administrators because they are not physicians and cannot assess the reasonableness of the treatment chosen by prison doctors") (citing McAleese v. Owens, 770 F. Supp. 255, 263 (M.D. Pa 1991)). Accordingly, Defendants Cullen and Parkyn are entitled to summary judgment on the basis that the doctrine of qualified immunity shields them from Plaintiff's claims.

### D. FTCA Claims

The FTCA "provides a mechanism for bringing a state law tort action against the federal government in federal court," and the "extent of the United States' liability under the FTCA is generally determined by reference to state law." See In re Orthopedic Bone Screw Prod. Liab. Litig., 264 F.3d 344, 362 (3d Cir. 2001) (quoting Molzof v. United States, 502 U.S. 301, 305 (1992)). In the instant case, Plaintiff asserts claims of medical negligence under the FTCA. Where a federal court is presented with a claim brought under the FTCA, it applies the law of the state in which the alleged tortious conduct occurred. See 28 U.S.C. § 1346(b). In this case, the allegedly tortious conduct occurred in Pennsylvania, and, therefore, the Court refers to Pennsylvania tort law to assess the extent of the United States' potential liability for Plaintiff's medical negligence claims. To maintain a negligence claim under Pennsylvania law, a plaintiff must demonstrate: "(1) a duty on the part of the defendant to conform to a certain standard of conduct with respect to the plaintiff; (2) a breach of that duty by the defendant; (3) a causal connection between the defendant's conduct and the injury suffered by the plaintiff; and (4) actual loss or damage suffered by the plaintiff." See Harris v. Oz Directional Drilling, Inc., No. 3:13-cv-2580, 2016 WL 4578150, at *3 (M.D. Pa. June 30, 2016), report and recommendation adopted, 2016 WL 4698635 (M.D. Pa. July 19, 2016). Furthermore, to maintain a prima facie case of medical negligence, "as a general rule, a plaintiff has the burden of presenting expert

opinions that the alleged act or omission of the defendant physician or hospital personnel fell below the appropriate standard of care in the community, and that the negligent conduct caused the injuries for which recovery is sought." See Simpson v. Bureau of Prisons, No. 02-2213, 2005 WL 2387631, at *5 (M.D. Pa. Sept. 28, 2005).

Under Rule 1042.3 of the Pennsylvania Rules of Civil Procedure, plaintiffs seeking to raise medical negligence claims must file a valid certificate of merit.  That rule states in pertinent part:

> (a) In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either []

> (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

> (2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or

> (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Pa. R. Civ. P. 1042.3.  The requirements of Rule 1042.3 are substantive in nature and, therefore, federal courts in Pennsylvania must apply these prerequisites of Pennsylvania law when assessing the merits of a medical malpractice claim.  See Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 262-65 (3d Cir. 2011); Iwanejko v. Cohen & Grigsby, P.C., 249 F. App'x 938, 944 (3d Cir. 2007).  This requirement applies with equal force to counseled complaints and to pro se medical malpractice actions asserted under state law.  See Hodge v. Dep't of Justice, 372 F. App'x 264, 267 (3d Cir. 2010) (affirming district court's dismissal of medical negligence

claim for failure to file a certificate of merit); <u>Levi v. Lappin</u>, No. 07-1839, 2009 WL 1770146, at *1 (M.D. Pa. June 22, 2009).

Plaintiff has filed a certificate of merit, appearing to suggest that expert testimony is unnecessary for prosecution of his medical negligence claims.  (Doc. No. 16.)  "Should a plaintiff certify that expert testimony is unnecessary, 'in the absence of exceptional circumstances the attorney is bound by the certification and, subsequently, the trial court shall preclude the plaintiff from presenting testimony by an expert on the questions of standard of care and causation.'"  <u>See</u> <u>Rodriguez v. United States</u>, No. 3:14-cv-1149, 2016 WL 4480761, at *4 (M.D. Pa. Aug. 23, 2016) (quoting Pa. R. Civ. P. 1042.3(a)(3), <u>aff'd</u>, 695 F. App'x 669 (3d Cir. 2017).  In short, "the consequence of such a filing is a prohibition against offering expert testimony later in the litigation, absent 'exceptional circumstances.'"  <u>See</u> <u>Liggon-Redding</u>, 659 F.3d at 265.

Moreover, the Supreme Court of Pennsylvania has noted that because "the negligence of a physician encompasses matters not within the ordinary knowledge and experience of laypersons a medical malpractice plaintiff [typically] must present expert testimony to establish the applicable standard of care, the deviation from that standard, causation and the extent of the injury."  <u>See</u> <u>Toogood v. Owen J. Rogal, D.D.S., P.C.</u>, 824 A.2d 1140, 1145 (Pa. 2003).  A very narrow exception applies "where the matter is so simple or the lack of skill or care so obvious as to be within the range of experience and comprehension of even non-professional persons.'  <u>See</u> <u>Hightower-Warren v. Silk</u>, 698 A.2d 52, 54 n.1 (Pa. 1997).  However, three (3) conditions must be met before the doctrine of <u>res</u> <u>ipsa</u> <u>loquitur</u> may be invoked:

> (a) either a lay person is able to determine as a matter of common knowledge, or an expert testifies, that the result which has occurred does not ordinary occur in the absence of negligence; (b) the agent or instrumentality causing the harm was within the exclusive control of the defendant; and (c) the evidence offered is sufficient to

remove the causation question from the realm of conjecture, but not so substantial that it provides a full and complete explanation of the event.

See Toogood, 824 A.2d at 1149-50.

In the instant case, the Court agrees with Defendants that Plaintiff requires expert testimony to establish that BOP medical staff at FCI Allenwood-Medium were negligent and that their alleged failure to provide proper treatment, including a special diet, was the cause of his GI issues. See Blank v. United States, No. 4:14-cv-502, 2016 WL 8116679, at *6 (N.D. Tex. Dec. 2, 2016) (concluding that the inmate-plaintiff was required to present expert testimony to support his medical negligence claims concerning gastrointestinal illnesses). Plaintiff, therefore, "may not rely upon Rule 1042.3(a)(3) or the doctrine of res ipsa loquit[u]r to carry his burden of proof on the issues of negligence and causation that are central to this tort claim." See Njos v. United States, No. 3:15-cv-931, 2017 WL 6949812, at *7 (M.D. Pa. Oct. 17, 2017), report and recommendation adopted, 2018 WL 453441 (M.D. Pa. Jan. 17, 2018).

In opposition to Defendants' motion, Plaintiff avers that the food he ate at FCI Ray Brook caused him to have a permanent disease and, therefore, no expert is needed to establish ordinary negligence. (Doc. No. 46 at 13-15.) Specifically, he maintains that the negligence occurred when he ate "unsanitary food" from the kitchen at FCI Ray Brook. (Id. at 13-14.) A review of Plaintiff's second amended complaint, however, leads the Court to conclude that he has asserted two kinds of negligence claims—ordinary negligence claims concerning actions taken at FCI Ray Brook and medical negligence claims concerning events at FCI Allenwood Medium. Thus, despite Plaintiff's efforts to "change and shift his legal claims," the Court concludes that his medical negligence claims require expert testimony and that Plaintiff "has not provided a competent declaration from an appropriate licensed professional which satisfies the requirements

of Pennsylvania law." See Njos, 2017 WL 6949812, at *8. Defendants, therefore, are entitled to summary judgment with respect to Plaintiff's FTCA medical negligence claims on this basis.

As noted supra, Plaintiff also asserts ordinary negligence claims concerning what occurred at FCI Ray Brook. In their reply brief, Defendants assert that Plaintiff "cannot sue here for alleged negligence that he claims occurred outside this district." (Doc. No. 47 at 6.) They assert that this Court is not the "proper venue because the events that he claims caused the negligence occurred outside this district." (Id. at 7.) The FTCA, however, has its own venue statute, which provides that "[a]ny civil action on a tort claim against the United States under subsection (b) of section 1346 of [Title 28 of the United States Code] may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." See 28 U.S.C. § 1402(b). As noted supra, the Northern District of New York would be where the "acts or omissions complained of occurred." See id. With respect to Plaintiff's residence, although he is currently incarcerated within this district, "it is possible that under Third Circuit law, his residence for venue purposes would be his 'place of domicile before [his] incarceration.'" See Sanchez-Mercedes v. Bureau of Prisons, 453 F. Supp. 3d 404, 427 (D.D.C. 2020 (quoting Keys v. Dep't of Justice, 288 F. App'x 863, 866 (3d Cir. 2008)); see also Flanagan v. Shively, 783 F. Supp. 922, 935 (M.D. Pa.), aff'd, 980 F.2d 722 (3d Cir. 1992) (noting that an inmate does not become a resident of a state by virtue of his incarceration there). Plaintiff has not provided no information about where he resided prior to his incarceration. However, liability under the FTCA is based upon the law of the state where the event giving rise to liability occurred. See 28 U.S.C. § 1346(b). Thus, New York law governs Plaintiff's claims concerning ordinary negligence at FCI Ray Brook. Accordingly, the Court will sua sponte transfer

Plaintiff's FTCA ordinary negligence claims concerning events at FCI Ray Brook to the United States District Court for the Northern District of New York for further adjudication there.

## V.     CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss and/or for summary judgment (Doc. No. 38) will be granted in part and denied in part.  The motion will be granted as to: (1) Plaintiff's official capacity <u>Bivens</u> claims against Defendants Cullen and Parkyn and his official and individual capacity claims against Defendant Zalno; (2) Plaintiff's Eighth Amendment <u>Bivens</u> claims against Defendants Cullen and Parkyn in their individual capacities; and (3) Plaintiff's FTCA medical negligence claims against the United States.  The motion will be denied to the extent Defendants seek dismissal of Plaintiff's <u>Bivens</u> claims against Defendants Foster, Sorrell, and Robinson.  The Court will transfer Plaintiff's <u>Bivens</u> claims against Defendants Foster, Sorrell, and Robinson, as well as his FTCA ordinary negligence claims concerning events at FCI Ray Brook, to the United States District Court for the Northern District of New York for further proceedings.  An appropriate Order follows.