**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JORGE GOMEZ,

                              Plaintiff,

         - v -                                                    Civ. No. 9:21-CV-0658
                                                                      (GTS/DJS)
J.B. FOSTER, HSA; K. SORRELL; and
UNITED STATES OF AMERICA,

                              Defendants.

**APPEARANCES:**                          **OF COUNSEL:**

JORGE GOMEZ
Plaintiff, *Pro Se*
FCI Fairton
PO Box 420
Fairton, New Jersey 08320

DEPARTMENT OF JUSTICE                    EMER M. STACK, ESQ.
UNITED STATES ATTORNEYS OFFICE           Assistant United States Attorney
Attorney for Defendants
100 S. Clinton St.
Suite 9000
Syracuse, New York 13261

**DANIEL J. STEWART**
**United States Magistrate Judge**

## **REPORT-RECOMMENDATION and ORDER**

        Plaintiff, an incarcerated individual in the custody of the Federal Bureau of Prisons

("BOP"), brought this action pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*,

403 U.S. 388 (1971) and 28 U.S.C. § 1346.  The Fourth Amended Complaint, the

operative pleading, alleges that the two individual Defendants, Foster and Sorrell,

violated Plaintiff's Eighth Amendment rights by being deliberately indifferent to his serious medical needs. Dkt. No. 114 at pp. 2-6, Fourth Am. Compl. The Complaint further alleges a claim against the United States for malpractice under the Federal Tort Claims Act. *Id*. at pp. 6-7; Dkt. Nos. 56 & 65 (outlining nature of claims made by Plaintiff). Plaintiff and Defendants have now filed dueling Motions for Summary Judgment. Dkt. Nos. 165 & 167. Additional briefing on the Motions has also been received. Dkt. Nos. 175, 179, 193. For the reasons set forth below, the Court recommends that Defendants' Motion be granted, Plaintiff's Motion be denied, and that the matter be dismissed.

## I. BACKGROUND

Plaintiff Jorge Gomez is in the custody of the Federal Bureau of Prisons, and between May 17, 2017, and May 4, 2018, was housed at FCI Ray Brook in the Adirondacks. Dkt. No. 175 at ¶ 1, Pl's Response to Defendants' Statement of Material Facts (Pl's Resp. to Defs' SOMF).[1] On Thursday, January 25, 2018, Plaintiff was housed in Ray Brook's Special Housing Unit (SHU). *Id*. at ¶ 7. After eating baked chicken for lunch, Plaintiff fell ill that evening, with abdominal pain and bouts of vomiting and diarrhea. *Id.* at ¶¶ 8 & 9. The next day, January 26, 2018, Plaintiff complained about his symptoms to a staff member, "Foster", who was making rounds. *Id.* at ¶ 10. Foster advised Plaintiff that there was a virus going around and that he should stay hydrated. *Id*. at ¶ 11. Plaintiff saw, or interacted with, medical staff over the weekend, and he indicates

---

[1] In accordance with the Local Rules, Plaintiff's response to Defendants' Statement of Material Facts correctly repeats the Defendants' assertions and, therefore, the Court references only Plaintiff's response.

that on Monday he complained about his symptoms to Defendant Kimberly Sorrell. *Id.* at ¶¶ 14 & 15. Plaintiff maintains that, in response to a catalog of symptoms, Sorrell recommended that he take sips of water. *Id.* at ¶¶ 15-17. Plaintiff continued to complain to Sorrell, and showed her blood in his stools, to which she indicated she would prescribe him a suppository and provide him with milk of magnesia. *Id*. at ¶¶ 18 & 19.

On Thursday, February 1, 2018, Plaintiff was seen by Michael Peck, a registered nurse, and reported diarrhea with liquid stools, but with a reduction of the diarrhea in the last two days. *Id.* at ¶¶ 20 & 21. Peck reported in the medical records that Plaintiff denied certain conditions, including constipation, cramping, nausea or vomiting, or pain in his abdomen when palpitated, but did note a small amount of rectal bleeding. *Id.* at ¶¶ 23-26; Dkt. No. 168-14, Exhibit A to Sorrell Decl., at Bates ## 190-192. Defendant Sorrell reviewed Peck's notes and determined that the care prescribed was appropriate. Dkt. No. 167-18, Sorrell Decl. at ¶ 7. Plaintiff reports that after taking the milk of magnesia, he continued to throw up. Pl's Resp. to Defs' SOMF at ¶ 34.

On February 3, 2018, Plaintiff was found to be "bedridden and in pain." *Id.* at ¶ 35. He was then seen and evaluated by the staff nurse in the SHU. *Id*. at ¶ 36. Based upon his history and complaints of increased pain, Plaintiff was taken to the emergency department of the Adirondack Medical Center. *Id*. at ¶ 41. During the transport the Plaintiff became unresponsive and hypotensive. *Id*. at ¶ 42. After arrival the Plaintiff's blood pressure stabilized. Dkt. No. 168-2, Exhibit C to Stack Decl. at Bates # 919. A CT scan was taken. Pl's Resp. to Defs' SOMF at ¶ 45. The CT scan showed moderate colitis,

but did not show evidence of bowel obstruction, stricture, abscess, or perforation.  Stack

Decl. Exhibit D at Bates ## 994-995.  Plaintiff was then provided with IV fluids and a

broad spectrum of antibiotics.  Pl's Resp. to Defs' SOMF at ¶ 48.

A colonoscopy was performed on February 8, 2018, which noted "thick edematous

cecum, mucus/stool throughout, no polyps or ulcerations noted.  *Id.* at ¶¶ 51-52.  Rectal

biopsies were taken and noted as normal.  *Id*. at ¶ 53.  Specifically, the surgical pathology

report stated:

> The cecal mucosal biopsies demonstrate relatively good preservation of the normal glandular architecture. Focal acute inflammatory cells are present in the surface epithelium and superficial portions of the epithelial glands with occasional crypt abscesses and a mucofibropurulent exudate on the surface of the mucosa.  No adenomatous epithelial hyperplasia, dysplasia, granulomas or parasitic organisms are identified.  The collagen layer beneath the surface epithelium is not thickened. The historic findings in the cecum are consistent with focal active colitis with surface exudate. The differential diagnosis includes C. difficile pseudomembranous colitis, infectious colitis due to Shigella, Salmonella, Enterohemorrhagic E. coli or Kiebsiella oxytoca, acute self-limited colitis or ischemic colitis, which is less likely. Clinical correlation is recommended.

Dkt No. 168-7, Exhibit H, at Bates # 974.

On February 9, 2018, the Plaintiff was discharged from Adirondack Medical

Center and returned to FCI Ray Brook.  Pl's Resp. to Defs' SOMF at ¶ 60.  At that time

the Plaintiff indicated he was feeling better, his symptoms of abdominal pain had mainly

resolved, and vital signs, appetite, and bowel movements were normal.  *Id.* at ¶ 61.  Upon

discharge, Plaintiff was prescribed a course of Augmentin, and Percocet as needed for

pain control, and this care plan was transmitted to the Facility.  *Id.* at ¶¶ 63 & 64.  Upon

his return, Plaintiff reported that he was feeling better but still had "a little pressure" in

his rectum when using the bathroom, and Defendant Sorrell ordered Plaintiff to receive Augmentin, as well as Tylenol (rather than Percocet) for pain management. *Id*. at ¶¶ 65 & 66. On February 10, 2018, Plaintiff began to have increased pain while going to the bathroom, but he did not report it. *Id*. at ¶ 70.

Plaintiff was then evaluated by an Advanced Emergency Medical Technician as a result of his complaints of frequent diarrhea and was sent back to the emergency room at the Adirondack Medical Center for further evaluation. *Id*. at ¶¶ 71 & 72. Another CT scan was performed which showed "mild descending colitis… much improved since previous CT scan." *Id*. at ¶ 74. The attending physician discontinued Plaintiff's prescription for Augmentin and Percocet, and instead ordered alternate antibiotics. *Id*. at ¶ 75. Tylenol with codeine and ibuprofen were also prescribed. *Id*. at ¶ 76. Upon his return to FCI Ray Brook that same day, Plaintiff was provided the prescribed antibiotic medications, but was not provided the Tylenol with codeine. Sorrell Decl., at ¶ 14. Defendant Sorrell then sought to increase Plaintiff's care level to level 2 so that he could be transferred to an institution able to provide support for his G.I. issues. *Id*. at ¶ 15; Pl's Resp. to Defs' SOMF at ¶ 83.

On March 28, 2018, Plaintiff complained that his colitis symptoms were coming back every time used the restroom. Pl's Resp. to Defs' SOMF at ¶ 85. An assessment was done by Defendant Sorrell, who noted that the Plaintiff had stable vital signs and did not appear to be in distress. She prescribed an anti-inflammatory medicine. *Id*. at ¶¶ 86-87. Finally, on April 9, 2018, Plaintiff made a complaint of rectal bleeding to Defendant

Sorrell, who then examined him, did not observe any such bleeding, and advised him to continue with his current treatment protocols. *Id.* at ¶¶ 88-91.

On May 4, 2018, Plaintiff was transferred from FCI Ray Brook to FCI Allenwood. *Id.* at ¶ 92. Plaintiff was followed and treated for colitis and noneffective gastroenteritis, as previously diagnosed. *Id.* at ¶ 93. On August 12, 2020, Plaintiff's treating physician at Geisinger Gastroenterology, a private facility, summarized as follows:

> This patient has had a couple of years of interesting symptoms, rectal pain and burning, loose bowel movements bloating, and has responded very nicely to Levaquin, for empiric treatment for prostatitis. The bottom line is, I think the patient should see a urologist. I am not at all convinced the patient has chronic ulcerative colitis or Crohn's disease, or really any other bowel disease that should be causing these problems.

*Id.* at ¶ 96; Dkt. No. 168-12 at p. 4.

## II. STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v.*

*Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). In considering a summary judgment motion, the Court's role "is carefully limited to discerning whether there are any genuine issues of material fact to be tried." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding pro se, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *accord. Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. DISCUSSION

### A. The FTCA Claim

When Plaintiff originally commenced this action in 2020 in the middle District of Pennsylvania, he made claims for ordinary negligence and for medical malpractice pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671-2680. Dkt. No. 17 at pp. 1-2, Second Am. Compl. The FTCA claims were reviewed by by District Court Judge Brenda K. Sannes who concluded that the Plaintiff's allegation that the prison kitchen staff at FCI Ray Brook "negligently served Plaintiff spoiled food" failed to state a claim against Defendants and was therefore dismissed. Dkt. No. 56, July 26, 2021, Decision and Order, at pp. 11-12. The FTCA medical malpractice claim, however, was allowed to proceed. *Id*. That ruling dismissing the negligence claim against the United States was later reaffirmed by District Court Judge Glenn T. Suddaby in his September 27, 2021, Decision and Order, which allowed Plaintiff's Third Amended Complaint to proceed, but only in part. Dkt. No. 65 at p. 7 ("[P]laintiff's FTCA negligence claim asserted against Defendant United States [is] dismissed … for failure to state a claim upon which relief may be granted.").

When the Plaintiff filed his proposed Fourth Amended Complaint,[2] he noted that he was not trying to revive his previously dismissed claims, Dkt. No. 108 at p. 3.

---

[2] While designated a "Third Amended Complaint", it was in fact Plaintiff's fourth offering. *See* Dkt. No. 113 at p.1 n.1.

Accordingly, this Court recommended that the proposed Fourth Amended Complaint proceed forward, but that the FTCA claim was limited to one of medical malpractice. Dkt. No. 113. That remains the case.

In support of their Motion for Summary Judgment, the Defendants submitted both a Declaration and an Expert Report from Dr. Seth Crockett, a board-certified gastroenterologist and gastrointestinal endoscopist. Dkt No. 167-27 (Crockett Decl.) & 168-16 (Crockett Expert Report). In the Expert Report, Dr. Crockett opined that in early February 2018, Plaintiff "did have an episode of mild, self-limited colitis," but the cause of this condition was uncertain. Crockett Expert Report at p. 8. Because Plaintiff's stool test results were negative for bacterial pathogens, and there were reports of other ill prisoners at FCI Ray Brook during the same time, Dr. Crockett believes that a viral infection was a plausible cause. *Id.* Plaintiff's symptoms were possibly exacerbated by dehydration. *Id.* It was Dr. Crockett's opinion that the Plaintiff did not at any point suffer from a chronic inflammatory condition such as inflammatory bowel disease (IBD), i.e. Crohn's disease or ulcerative colitis, "[n]or did he suffer from any other chronic G.I. diseases such as colonic ischemia or diverticulitis." *Id.* Further, Dr. Crockett disputes Plaintiff's claim that he suffered from "infectious colitis due to: Shigella, Salmonella, Enterohemorrhagic, E. Coli, or Klebsiella Oyxtoca." *Id.* at p. 9. As stated by Dr. Crockett "Mr. Gomez's fecal studies and gastrointestinal panel taken at AMC were negative for any known pathogens, including C. difficile toxin, Salmonella, E. Coli, and Shigella.

While a false negative stool test is theoretically possible . . . nevertheless in this case there is no conclusive proof of the bacterial cause for gastroenteritis. *Id.*

Dr. Crockett also reviewed the care received by the Plaintiff while at FCI Ray Brook and determined that such care fell within the standard of care applicable to medical professionals. *Id.* at pp. 9-11. In particular, the Facility's initial response to his complaints of G.I. issues on February 1, 2018[3], including recommending that Plaintiff stay hydrated, processing an order for a suppository, the purchase of hemorrhoid cream, and over the counter pain medication, were all within the range of reasonableness. *Id.* at p. 9. No emergency intervention was necessary at that time. *Id.* at pp. 9-10.

Next, when the Plaintiff complained of acute, worsening illness on February 3, 2018, the medical staff appropriately sent him to a local hospital's emergency department for urgent examination and care. *Id.* at p. 10. The timing of this referral was within the standard of care and not delayed. *Id.*

In response to the Plaintiff's claim that he was not provided with "stronger pain medication" while at Ray Brook from February 9, 2018, through May 5, 2018, Dr. Crockett's opinion is that the Ray Brook medical staff was within the standard of care in their provision of pain medication. *Id.* Dr. Crockett noted that opioid pain medication carries significant G.I. side effects including nausea, vomiting, gastroesophageal reflux, constipation, and stomach bloating. *Id.* In Dr. Crockett's opinion, the minimal level of

---

[3] Dr. Crockett also opined regarding the Plaintiff's allegations concerning the Facility's initial treatment of him on January 26 and 29th 2018, after his complaints of diarrhea, stomach pain, and vomiting. Because G.I. conditions typically resolve on their own without specific treatment, and supportive care generally includes rest, hydration, and over the counter pain medications, Dr. Crockett's medical judgement was that even if Plaintiff's allegations are accepted, the treatment and care provided to him during this time frame was objectively reasonable. *Id.* at p. 10.

reported discomfort did not warrant the use of opioid pain medication such as Percocet, or codeine-based drugs such as Tylenol with codeine. *Id*. at pp. 10-11. In addition, opioids are not recommended for treating IBS symptoms. *Id.* at p. 11.

Finally, Dr. Crockett opined that the medical treatment provided to the Plaintiff by FCI Ray Brook medical staff in late January and early February 2018 did not cause or exacerbate his gastrointestinal issues or conditions. *Id*. at p. 11. In sum, it was the opinion of Dr. Crockett that Plaintiff likely acquired a stomach virus in prison, which triggered a flareup of his IBS, and the medical treatment provided to the Plaintiff by the Ray Brook medical staff did not worsen, aggravate, or exacerbate his medical condition in any way. *Id.* "All of the treatment afforded Mr. Gomez was reasonable and within the accepted standard of care, based upon the subjective complaints and clinical observations." *Id.*

Plaintiff has not opposed the present Motion with any expert proof, nor any opinion that the Medical Staff at FCI Ray Brook deviated from accepted medical standards that would have been applicable. As noted by the Second Circuit, such an omission in a case such is this is fatal to Plaintiff's FTCA malpractice claim:

> In order to prevail in a medical malpractice claim in New York, whose law is made applicable to this FTCA claim by 28 U.S.C. § 2674, *see, e.g.*, *Guttridge v. United States*, 927 F.2d 730, 732 (2d Cir. 1991) ("[T]he FTCA defines the liability of the United States in terms of that of a private individual under the law of the state where the alleged tort occurred...."), a plaintiff must establish "(1) that the defendant breached the standard of care in the community, and (2) that the breach proximately caused the plaintiff's injuries." *Arkin v. Gittleson*, 32 F.3d 658, 664 (2d Cir. 1994). These elements must be established by expert testimony, unless the testimony is

> within the ordinary knowledge and experience of the jury. *Milano by Milano v. Freed*, 64 F.3d 91, 95 (2d Cir. 1995).

*Vale v. United States of Am.*, 673 F. App'x 114, 116 (2d Cir. 2016).

It cannot be said that the evaluation of medical treatment of the Plaintiff during the period of January through March 2018 at FCI Ray Brook is one that is within the ken of any jury. The allegations of the Plaintiff, insofar as they allege medical malpractice, are wholly conclusory and predicated on conjecture. Indeed, Plaintiff's multi-year course of treatment after he was transferred to a federal facility in Pennsylvania underscores the complex nature of his IBS/GI condition. Without an expert opinion on these issues, with specific reference to the applicable standard of care and that such standard was violated by Defendant's conduct, a prima facie case of medical malpractice cannot be made out. *Deadwyler v. N. Shore Univ. Hosp. at Plainview*, 55 A.D.3d 780, 781 (2d Dep't 2008). For this reason, the Court recommends that Plaintiff's FTCA claim be dismissed.

## B. Bivens Eighth Amendment Claim

### 1. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act provides that a prisoner may not bring an action under federal law "with respect to prison conditions ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In this case, because the Plaintiff was still incarcerated at the time he filed his action, he was

required to timely exhaust all available administrative remedies. *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004)

The Federal Bureau of Prisons has a multi-tiered administrative remedy system with the stated purpose of "allow[ing] an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). The first tier requires the inmate to informally report the issue to the staff, the second tier requires the inmate to file a written remedy request with the Warden, and the third tier requires the inmate to file appeals with the appropriate Regional Director and then with the General Counsel. *See* 28 C.F.R. §§ 542.13–.15; *Macias v. Zenk*, 495 F.3d 37, 42 (2d Cir. 2007). There are specific time periods that apply to each step. *See Gonzalez v. Hasty*, 651 F.3d 318, 323 (2d Cir. 2011). For example, a formal written Administrative Remedy Request (BP-9), must be filed by the incarcerated individual within 20 calendar days following the date on which the basis for the request occurred, unless the inmate is granted an extension. 28 C.F.R. § 542.14.

Defendants assert that Plaintiff's claims must be dismissed due to his failure to exhaust available administrative remedies. Def's Mem. of Law at pp. 13-14. In addition to setting forth the grievance procedure as related above, Defendants have provided an affidavit from BOP legal assistant Cheryl Magnusson, who base their information upon a review of, *inter alia*, the computerized records maintained by BOP's database. Dkt. No. 167-20, Magnusson Decl. As to Plaintiff Gomez, Magnusson notes that he filed 102 total grievances, only a few of which were with FCI Ray Brook (designated as "RBK") during

his incarceration.  Magnusson Decl. at ¶¶ 7-8 & Dkt. No. 167-21, Exhibit A to Magnusson Decl.

Grievance #906884-F1 was marked received on June 19, 2017.  Magnusson Decl. at ¶ 9; Exhibit A at p. 2; Dkt. 167-22, Exhibit B at pp. 2-5.  That grievance asserted that Plaintiff was improperly sent to Ray Brook and should be transferred to FCI Otisville because he is a convicted sex offender. The grievance was denied by the Warden on July 11, 2017, Exhibit B at p. 3, and no appeal of this decision was ever filed.   Magnusson Decl. at ¶ 9; Pl's Resp. to Defs' SOMF at ¶¶ 98 & 101.

Next, Grievance #935275-F1 was filed on March 27, 2018. That Grievance referenced Plaintiff's medical care at Ray Brook, as well as access to his medical records. Exhibit A at p. 2; Dkt. No. 167-23, Exhibit C.  Plaintiff originally attempted an informal resolution, indicating that he needed to be seen by a specialist to treat his ongoing pain and discomfort from his colitis condition.  Exhibit C at p. 4.  That informal resolution was marked "issue resolved/relief granted" on March 6, 2018, when it was noted that he had been designated as a level II care inmate and would be transferred out.  *Id.* at pp. 4-5. However, Plaintiff then filed a request for administrative remedy on March 25, 2018, because he had not yet been transferred, nor had he received his medical records so he could have a lawyer review them.  *Id.* at p. 3.  On April 9, 2018, the Warden responded to the request for administrative remedy. In that response, the Warden noted that Plaintiff had been designated care level II on February 14, 2018, one day after his return from the hospital.  *Id.* at p. 2; Magnusson Decl. ¶ 10.  The medical records would be provided upon

14

written request.  Magnusson Decl. ¶ 10.  This determination by the Warden was not appealed to the next level by the Plaintiff.  Pl's Resp. to Defs' SOMF at ¶¶ 99 & 101.

Finally, in Grievance #938516, Plaintiff grieved a penalty that was imposed by the Facility for his plea to the disciplinary infraction of possession of contraband.  Exhibit A at p. 4, Dkt. No. 167-24, Exhibit D, at pp. 3-6.  The Regional Director agreed that the June 20, 2018, penalty regarding 180 days loss of visitation was improperly imposed, but otherwise upheld the disciplinary sentence.  *Id.*  This decision was also not appealed.  Pl's Resp. to Defs' SOMF at ¶ 101.

Plaintiff maintains that he did follow the administrative remedy process.  Pl's Resp. to Defs' SOMF at ¶ 97.  In particular, he references Grievance #985252-A1 that was filed in Pennsylvania.  *Id*.  He maintains that he provided a copy of his BP-11 Form, with the General Counsel's response, as part of his Third Amended Complaint.  Dkt. No. 193, Pl's Memo of Law at p. 3.  At other points on the docket, Plaintiff maintains that he exhausted his administrative remedies at all levels by filing forms BP-8, BP-9, BP-10, and BP-11.  *See* Dkt. No. 13; Dkt. No. 165.  However, none of those grievance filings have been presented to the Court in response to the Defendants' Summary Judgment Motion.  The electronic database form attached to the Magnusson Declaration does include Grievances ## 985252-F1 & 985252-R1.  While both of those grievances relate to ongoing medical issues, they were filed while the Plaintiff was at FCI Allenwood on July 24, 2019, and August 21, 2019, respectfully.  As noted above, Plaintiff was transferred out of FCI Ray Brook on May 4, 2019.  Accordingly, the 20-day time period

to file a grievance for conduct that occurred in FCI Ray Brook expired long before Grievance #985252-A1 was initiated. Plaintiff has not provided any evidence that the time limitations in connection with 28 C.F.R. § 542.14 were, or should be, extended. Indeed, the evidence in the Record was that Plaintiff was able to file a grievance about medical care while at FCI Ray Brook, but simply did not exhaust that process.

It is the Court's conclusion, based upon the admissible evidence, that the Plaintiff did not exhaust his administrative remedies in a timely and complete fashion, and that this failure bars his *Bivens* claim against the two Ray Brook staff members, Foster and Sorrell, named in the Fourth Am. Complaint. Nevertheless, and for the sake of completeness, the Court will continue with its analysis.

### 2. Availability of a Bivens Action

There is presently no statutory analog to 42 U.S.C. §1983 for violations of constitutional rights by individuals acting under color of federal law. *Ziglar v. Abbasi*, 582 U.S. 120, 130 (2017). In 1971, the Supreme Court did allow an implied claim for money damages for a fourth amendment constitutional violation suffered at the hands of federal officials. *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). Nine years later, the Court recognized the validity of a claim brought by the family of the federal inmate alleging that prison officials were deliberately indifferent to the decedent's serious medical needs, resulting in his death, in violation of the Eighth Amendment to United States Constitution. *Carlson v. Green*, 446 U.S. 14 (1980). Since that time,

however, extending the reach of *Bivens* has been considered a disfavored judicial activity.

As recently noted by the Second Circuit:

> Before a court may extend *Bivens*, it must engage in a two-step inquiry. The first step requires a court to determine whether the request involves a claim that arises in a 'new context' or involves a 'new category of defendants.' We interpret new context broadly, and a context is new if it is different in a meaningful way from previous *Bivens* cases decided by the Supreme Court. If a claim arises in a new context, the second step requires a court to determine whether there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed. If there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy. And if there are alternative remedial structures in place, that alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action.

*Cohen v. Trump*, 2024 WL 20558, at *2 (2d Cir. Jan. 2, 2024) (internal citations and quotations omitted).

The Defendants argue that under the stringent test established by the Supreme Court, the application of *Bivens* to Plaintiff's claims would be an extension of the existing precedent, and that special factors counsel hesitation. Counsel notes that there are meaningful differences between Plaintiff's Eighth Amendment deliberate indifferent denial of medical care claim, and the claim recognized by the Supreme Court in *Carlson*. In *Carlson* it was alleged that officials in the Federal Prison in Terre Haute, Ind., knew of Plaintiff Decedent's severe asthmatic condition, kept him in the jail against the advice of doctors, failed to give him competent medical attention after he had an asthmatic attack, administered contra-indicated drugs, used broken medical equipment in the facility, and delayed his transfer to an outside hospital, all of which resulted in his death. *Carlson v.*

*Green*, 446 U.S. at 17 n.1.   The present case involves the long-term treatment of gastrointestinal issues that, while resulting in periods of significant pain and discomfort, and two trips to the emergency room, did not result in death or significant permanent impairment, and are not life threatening.   The lesser level of severity of the condition may well present a context different from *Carlson*.   *Bettis v. Grijalva*, 2023 WL 4141869, at *6 (S.D.N.Y. June 23, 2023) (finding a different context from *Bivens* where plaintiff alleged that he was ignored and did not receive medical attention while his injuries left him with blood in his urine and swollen testicles) (collecting cases).   Further, the availability of a claim under the Federal Tort Claims Act has been considered by some courts as a compelling reason not to extend *Bivens*.   *See Johnson v. Santiago*, 624 F. Supp 3d 296, 302 (E.D.N.Y. 2022); *Scott v. Quay*, 2020 WL 8611292, at *9 (E.D.N.Y. Nov. 16, 2020); *Swinton v. Serdula*, 2022 WL 3701196, at *7 (W.D.N.Y. Aug. 26, 2022); *But see Mirvis v. Quay*, 2023 WL 5671935, at *10 (E.D.N.Y. Sept. 1, 2023) (internal quotation marks omitted) ("[N]either the Supreme Court nor the Second Circuit has explicitly decided whether, in the wake of *Abbasi*, the availability of an FTCA action precludes the *Bivens* remedy.").

Despite the Defendants' compelling arguments, the Court will assume without deciding that this case is not an extension of *Carlson* and will proceed to the merits of the Plaintiff's Eighth Amendment Claim.

### 3. Merits of the Eighth Amendment Claim

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This standard incorporates both objective and subjective elements. The first prong is an objective standard and considers whether the medical condition is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d at 702 (internal quotation marks and citation omitted). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

As to the first prong, the Court finds that the gastrointestinal conditions alleged by Plaintiff during his time at FCI Ray Brook, which resulted in continued pain and discomfort, two trips to the hospital, becoming unresponsive and hypotensive, requiring diagnostic treatment including a colonoscopy, satisfy the standard of a serious medical need.

The second element is a subjective standard requiring Plaintiff to demonstrate that a defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. 294, 302 (1991); *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)*.* A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836. "In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety." *Wright v. Genovese*, 694 F. Supp. 2d 137, 154 (N.D.N.Y. 2010) (citing *Chance v. Armstrong*, 143 F.3d at 702). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. at 837). As to this element, the Court finds that summary judgment is appropriate as to both Defendants.

In making this determination, the Court is cognizant of the fact that civil rights claims focus on the particular act or acts of a named defendant. A *Bivens* claim is brought against an individual "for his or her own acts, not the acts of others," including those of subordinates. *See Ziglar v. Abbassi*, 582 U.S. at 140; *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."); *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. at 676) ("[A]fter Iqbal, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions,

has violated the Constitution.'"). Further, the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, and not every lapse in prison medical care will rise to the level of a constitutional violation. *See Estelle v. Gamble*, 429 U.S. at 105-06.

Starting first with Defendant Foster, the Plaintiff alleges that on Friday, January 26, 2018, in response to his reporting to her of his gastrointestinal symptoms, the Defendant advised the Plaintiff that there was a virus going around the facility, and that he should keep hydrated. Pl's Resp. to Defs' SOMF at ¶ 11. While the Defendant, Jessica Foster denies that she had *any* involvement with the Plaintiff with respect to his care, *see* Dkt. No. 167-25 at ¶¶ 7-9, on summary judgment, the Court must view the evidence in the light most favorable to the nonmovant. *Donohue v. Hochul,* 32 F.4th 200, 206 (2d Cir. 2022). However, it is also clear that after this one encounter at the onset of the acute symptoms reported by Plaintiff, Defendant Foster is reported to have no further personal involvement with the Plaintiff's care, and Plaintiff had no additional dealings with her other than seeing her in the "chow hall" before he was transferred to FCI Allenwood. Dkt. No. 167-25, Foster Decl.; Pl's Response to Defs' SOMF at ¶ 13. In light of the limited involvement of Defendant Foster alleged by Plaintiff, and the fact that Defendants have supplied admissible and undisputed expert evidence that the care provided during this time, including staying hydrated, met the standard of care, and that a referral to the emergency room at this early date was not warranted, Plaintiff has failed to establish a prima facie claim of deliberate indifference against Defendant Foster.

The complaints with regard to Defendant Sorrell are more specific. In particular the Plaintiff complains that Defendant Sorrell delayed transferring him to the emergency room for care and treatment; that she prescribed milk of magnesia for his symptoms which in fact aggravated his condition; that even though the hospital had authorized providing opioid based pain medication, Defendant Sorrell provided Tylenol instead; and that he was not referred out to a different facility or specialist until he left Raybrook on May 4, 2018.   Again, assuming those allegations to be correct, the high standard of deliberate indifference has not been met.  Defendants' expert confirms that the hospital referral was done at the correct time, and that the other treatment provided at the facility by Defendant Sorrell, as well as others, was well within reasonable medical judgment. The pain medication decision was warranted because the opioid based pain medication would have aggravated Plaintiff's G.I. condition.

A claim based on an inmate's disagreement with the defendant's medical judgment as to the proper course of treatment cannot support a constitutional claim for deliberate indifference. *Simpson v. Oakes*, 640 F. App'x 86, 88 (2d Cir. 2016).  And it is generally understood that "the ultimate decision of whether or not to administer a treatment or medication is a medical judgment that, without more, does not amount to deliberate indifference." *Jacks v. Annucci*, 2019 WL 3239256, at *4 (S.D.N.Y. July 18, 2019) (internal quotation marks omitted); *see also Smalls v. Wright*, 807 F. App'x 124, 126 (2d Cir. 2020) (summary order) ("[Defendant]'s decisions not to order an MRI and not to

refer [plaintiff] to a specialist constitute matters of medical judgment that do not give rise to [a constitutional] violation.").

In sum, Plaintiff Gomez has failed to show a disputed issue of material fact sufficient to overcome Defendants' Motion for Summary Judgment as to whether the two individual Defendants were deliberately indifferent to his medical needs. Accordingly, the Court recommends that the Defendants motion be granted on this ground as well as to the individual Defendants.

### C. Qualified Immunity

The doctrine of qualified immunity provides an immunity from suit, and thus liability, for public officials acting reasonably under the circumstances presented. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 580 U.S. 73, 78-79 (2017) (internal quotation and citation omitted); *see also Behrens v. Pelletier*, 516 U.S. 299, 305 (1996). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation omitted); *see also Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotations and citations omitted) ("To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right."). "The principles of qualified immunity shield an officer from personal

liability when an officer reasonably believes that his or her conduct complies with the law." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009).

For the reasons set forth above and based upon the complicated medical history of the Plaintiff, a reasonable correction official in Defendant Foster or Sorrell's position could have believed that, given the information provided to them, it was not a violation of Plaintiff's Eighth Amendment rights to provide the course of treatment that they did. Defendants Sorrell and Foster, therefore, are also entitled to qualified immunity. *Id.*

## IV.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Motion for Summary Judgment (Dkt. No. 165) be **DENIED**; and it is

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 167) be **GRANTED**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days[4] within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  <u>**FAILURE TO OBJECT TO THIS REPORT WITHIN**</u>

---

[4] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  FED. R. CIV. P. 6(a)(1)(C).

**FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v.*

*Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*,

892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:  February 16, 2024
         Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge